IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.                                        CRIMINAL ACTION NO. 1:10CR07

MICHAEL J. PAVLOCK and
RICHARD W. POWELL, JR.,

                    Defendants.

## ORDER/OPINION GRANTING  DEFENDANT'S MOTION FOR LEAVE TO SERVE RULE 17(c) SUBPOENAS

On the 20th day of September 2010, the Defendant, Michael J. Pavlock [Pavlock], through counsel, filed a Motion For Issuance of Subpoenas [sic] Duces Tecum pursuant to Rule 17(c) [Docket Entry 134].    The United States responded indicating "no objection." [DE 139]. Notwithstanding the lack of objection,  the granting of the limited procedural relief requested in the motion will not deprive the United States or any interested third parties from their respective due process opportunity to be heard on any substantive issues that may be involved.

By the motion, Pavlock seeks permission of the Court to prepare and submit to the Court "document subpoenas pursuant to Rule 17(c) to ... : Mary Bower Sheats, Esquire, Belinda Haynie, Esquire, Hiram Lewis, Esquire, Susan Roberts, Esquire, Timothy Andrews, Heather Papp, Esquire, Mary Hajduk, Esquire, and BB&T Bank, United Bank and Central Bank." [DE 134].  Pavlock asserts the attorney witnesses represented "persons, firms, or entities, and specifically, the entities of which the government claims were mere business shells established for fraudulent purposes."  Pavlock asserts the named banks did business with him or the alleged victims in the case.

Pavlock is charged with wire fraud in violation of 18 U.S.C. section 1343.   The Indictment charges Pavlock in Counts 1 through 12 with "knowingly and intentionally devising a scheme and artifice to defraud and for obtaining money and property from others by means of material false and fraudulent pretenses, representations, and promises . . . . . On or about the dates below, defendant

[] transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, picture and sounds for the purpose of executing such scheme and did aid abet, counsel, command, induce, procure and willfully cause the transmission of the following wire communications in interstate commerce, each transmission constituting a separate count."

In his Motion, Pavlock asserts: 1) the documents that will be sought from the witnesses are being requested to prepare a defense to the allegation that "no business was truly conducted by the multiple various entities of which Pavlock was engaged"; "to insure that all checks and deposits alleged to be questionable can be 'tallied'"; that the documents in question, "particularly documents within the control of such putative alleged victims as Edith or Bob Konchesky's attorneys cannot be obtained by any means other than subpoena"; and that *in camera* review "is warranted so that the Court may resolve issues of privilege." [DE 134].

F.R.Cr.P. 17(c) provides in pertinent part:

1)    A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

2)    On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

3)    After a ... indictment, ... is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

A subpoena for documents may be quashed if their production would be "unreasonable or oppressive," but not otherwise. In Bowman Dairy Co. v. United States, 341 U.S. 214, 71 S.Ct. 675, 95 L.Ed. 879 (1951). Bowman recognized two fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases,

and (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials.

In United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), the Supreme Court found that the moving party must clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity. In fn.11 of the Decision, the Court noted a statement the District Court quoted from of a member of the advisory committee that the purpose of the rule was to bring documents into courts "in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose . . . of enabling the party to see whether he can us (them) or whether he wants to use (them)." 341 U.S., at 22, n.5, 71 S.Ct. at 678. "The Manual for Complex and Multi-district Litigation published by the Federal Judicial Center recommends that use of Rule 17(c) be encouraged in complex criminal cases in order that each party may be compelled to produce its documentary evidence well in advance of trial and in advance of the time it is to be offered."

This case has not been designated as complex and does not involve multi-district litigation.

In the normal criminal case in which this type of subpoena becomes an issue, the subpoenas are directed to one of the parties. In this case the subpoenas are directed to third parties. Interestingly, in Nixon, the district court had found that it was faced with "the more unusual situation . . . where the subpoena, rather than being directed to the government by defendants, issues to what, as a practical matter, is a third party." The Special Prosecutor, who was seeking the production, suggested that the evidentiary requirements did not apply as vigorously "when the subpoena duces tecum is issued to third parties rather than to government prosecutors." The Supreme Court stated, however:

> We need not decide whether a lower standard exists because we are satisfied that the relevance and evidentiary nature of the subpoenaed tapes were sufficiently shown as a preliminary matter to warrant the district Court's refusal to quash the subpoena.

Although the movant could not describe the contents of the subpoenaed tapes fully, the Court found "there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment." Further, "there was a sufficient preliminary showing that each of the subpoenaed tapes contain[ed] evidence admissible with respect to the offense charged in the indictment. The Court also found there were other "valid potential evidentiary uses for the [] material, and the analysis and possible transcription of the tapes may take a significant period of time." Accordingly the Court could not conclude that the District Court erred in authorizing the issuance of the subpoena duces tecum.

The Court in this case is being asked to "enter an Order granting [Pavlock] leave to **promulgate, for Court approval** several subpoenas duces tecum." [emphasis added][DE 134, p. 3]. Rule 17(c) does not require leave of Court to prepare a subpoena duces tecum. However, the provision giving the Court the opportunity to direct the witness to produce the materials in court before trial and to permit inspection by the parties clearly implies the Court has a right to review the subpoena offered before service. Furthermore, the provisions of Rule 17(c)(3) would be meaningless if the Court did not review the subpoena prior to service on a third party after indictment. In the instant case, clearly the proposed subpoenas are on third parties and post indictment. The Court cannot know if the information Pavlock is seeking by virtue of the proposed subpoenas is personal or confidential in nature until it sees the actual language of the subpoenas. However, it is likely that the subpoenas to attorneys will involve confidential materials of their clients as would the records being sought from the banks. Moreover, the Court is unable to determine if the subpoenas are for the purpose of discovery as opposed to the gathering of possible evidence for trial until the subpoena has been submitted to the Court for review.

Accordingly, the Court finds it would be advantageous in this case for the Court to be able to inspect the subpoenas in advance to determine whether they can be used.

Upon consideration of all which, the Court **GRANTS** Defendant's Motion [DE 134] but limits the relief to that which was actually requested: Pavlock is hereby granted "leave to promulgate, for Court approval several subpoenas duces tecum." In order to not delay these proceedings or impact the trial scheduled for November 30, 2010, such subpoenas duces tecum as may be promulgated shall be submitted to the Court for review not later than Thursday, September 30, 2010.

The Clerk is directed to remove DE 134 from the docket of motions actively pending before this Court.

The Clerk for the United States District Court for the Northern District of West Virginia is directed to electronically provide a copy of this order to counsel of record and to the pro se party defendant by regular United States Mail addressed to him at his address as shown on the docket of this case.

**IT IS SO ORDERED**.

DATED: September 23, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE