FILED

OCT 26 2010

U.S. DISTRICT COURT
CLARKSBURG, WV 2630

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 1:10CR07

MICHAEL J. PAVLOCK and
RICHARD W. POWELL, JR.,

        Defendants.

## OPINION / REPORT AND RECOMMENDATION

### I
### PROCEDURAL HISTORY

A grand jury attending the United States District Court for the Northern District of West Virginia returned a fifteen-count indictment against Defendant and his co-defendant Richard W. Powell, Jr., on January 5, 2010. Said indictment charges Pavlock with twelve counts of Wire Fraud (Counts One through Twelve), and three counts of False Entries in Bankruptcy Document (Counts Thirteen through Fifteen). There is also a Forfeiture Allegation. Defendant was arraigned on January 12, 2010, and entered a plea of "Not Guilty" to all counts.

On the 21st day of October came the United States by Assistant United States Attorney Andrew Cogar [Cogar] and also came the defendant, Michael J. Pavlock [Pavlock], in person and by his counsel, Herbert A. Terrell and Craig P Erhard, and also came Richard W. Powell, Jr.[Powell], in person, pro se, for hearing on Pavlock's Third Motion To Dismiss Indictment [DE136] filed September 20, 2010.

The United States filed her Opposition To Defendant's Third Motion To Dismiss [DE 149] on September 24, 2010.

During the hearing no testimonial evidence was offered relative to the questions raised in Pavlock's Third Motion To Dismiss Indictment.[1] However, Pavlock argued facts derived from a partial transcript of the IRS tax investigation file pertaining to Pavlock and the United States supplemented the partial transcript by presenting and arguing from some additional portions thereof all without objection.

Thereupon the undersigned Magistrate Judge took the matter under consideration.

## II.
## CONTENTIONS OF THE PARTIES

Pavlock:

Pavlock contends the indictment should be dismissed because 1) his "rights under the 5th Amendment and/or 6th Amendment" were violated "by a parallel investigation by the FBI and the IRS during which (A) Fox of the FBI falsely advised IRS that the FBI was investigating Pavlock for drug trafficking and money laundering and that he was dangerous in order to cause IRS to look at Pavlock as an additional subject of its investigation, (B) IRS shared information and pre-indictment case notes that became part of the FBI criminal investigation file, (C) and IRS released attorney client privileged material to the FBI; and 2) the United States (A) "should be estopped to continue to proceed with the prosecution" of Pavlock on the indictment because (a) pre-indictment several citizens wrote complaints that FBI agent Fox engaged in witness intimidation and coercion encouraging witnesses to file false criminal and civil proceedings and to state they were victims of

---

[1] Pavlock testified during the hearing with respect to a pending motion to suppress evidence but did not offer testimony directly related to the claims he made in the motion to dismiss. Spencer Graham was present but was not called as a witness with respect to the bankruptcy fraud claims raised in the motion to dismiss. Pavlock elected to rely on the exhibits attached to his motion (IRS Investigation Transcript), the affidavit of William L. Graham, and argument, oral and written, of his counsel.

Pavlock when they repeatedly stated they were not, (b) post indictment compliant of William L. Graham that Fox attempted to get him to say he was a victim of Pavlock when he claims he was not; (B) Bankruptcy Trustee's sharing with the FBI of information from the bankruptcy estate by permitting search of records located at the debtor's business premises; and, (C) preventing prosecution of Counts 13-15 (Bankruptcy Crime Counts) because the government knows they are not supported by the evidence.

United States:

United States contends 1) Pavlock is attempting to "revive two claims that the Court rejected in its July 30, 2010 Order [Dkt # 96]" ie: (A) outrageous conduct claim based on (a) "information sharing between the FBI and IRS and (b) additional allegations of 'bad faith government misconduct'" and (B) "that the bankruptcy related charges in the indictment should be dismissed as lacking evidentiary support; 2) the information sharing and routine investigative techniques used in this case do not constitute outrageous conduct or violate any of Pavlock's Constitutional rights; and 3) the motion to dismiss the bankruptcy related charges is based on a factual dispute and therefore not subject to dismissal by the Court.

## III.
## DISCUSSION

Parallel Investigation

IRS began an investigation of Michael's Automotive Services on September 8, 2007. [DE 149, Exhibit 1, pg. 1]. By October 2, 2007 the IRS had obtained information from the public records of the West Virginia Secretary of State indicating Michel Pavlock as the Organizer and as a Member of Michael's Automotive Services, Inc. [DE 149, Exhibit 1, p. 3 and 4]. A note in the IRS file dated

October 4, 2007 states the IRS "will consider possible Criminal Fraud" investigation against Pavlock. [DE 149, Exhibit 1, p. 5].

The first recorded contact between Brian Fox, FBI, and the IRS occurred January 29, 2008 when Fox placed a call to the IRS investigator regarding Michael's Automotive Services, Inc., Michael Pavlock, and Spencer Graham. Before returning the call, the IRS investigator noted: "Verified my inability to even acknowledge that I have a case and need for FBI to get an 'I Order' so they could get information from IRS." The investigator returned Fox's call. Fox immediately acknowledged that he knew the IRS could not disclose information about whether there was a case or not but explained that he wanted to let the IRS know that Pavlock and Graham were being investigated for possible drug trafficking and that he was in the process of getting an ex-parte order to allow him to confer with the IRS and confirm that Pavlock had not filed Form 1040's. [DE 136, Exhibit 1, p. 8]. During the hearing of October 21, 2010, the United States represented in its argument that Fox had called the IRS to alert them to the potential danger of individuals suspected of drug trafficking.

Based on the partial IRS records presented in evidence it appears that the IRS continued to gather information pertinent to its tax investigation and was considering opening a fraud investigation. [DE 136, Exhibit 1, p. 8-54]. In particular, the IRS notes of March 10, 2008, March 28, 2008, June 4, 20008, June 26, 2008, August 27, 2008, September 4, 2008 [DE 136, Exhibit 1, p. 10, 11,19, 22, 24, 28 ] reflect the continuing gathering of information in order to make a determination whether or not to open an IRS fraud investigation. The records provided to the Court reflect that the IRS did reassign the investigation from the original investigator to the GM for reassignment to a GS 13 RO on September 4, 2008 because it appeared from its own investigation

and from the information provided by FBI agent Fox that "Michael's Automotive Services, Inc., is an entity that appears to be a front for running illegal drug trafficking, money laundering and fraud." [DE 136, Exhibit 1, p. 28].

Based on the IRS file submitted to the Court, the undersigned concludes that Fox told the IRS that the FBI was investigating Pavlock for drug trafficking and money laundering but that he did so not to cause the IRS to focus on Pavlock. Instead, he did so as a warning to another agency of the potential danger associated with any investigation of Pavlock. Moreover, the representations of Fox, did not have the effect of focusing the IRS investigation on Pavlock. The IRS had already determined from state records that Pavlock was part of its investigation of a number of business entities.

Furthermore, even though the records provided indicate the IRS investigation continued beyond October 8, 2009 [DE 136, Exhibit 1, p. 53], there is nothing to indicate in those same records and there is no evidence offered to the Court to establish that any information was provided to the FBI (there was no formal or informal file sharing) at any time during the IRS investigation and before the grand jury indictment that brings Pavlock before the bar of this Court. To the contrary, the IRS record is replete with notations indicating that both the IRS and the FBI were cognizant of the IRS' inability to provide any information to the FBI. [DE 136, Exhibit 1, p. 8, 23, 37, 40].

Pavlock's claim that the Bankruptcy Trustee improperly shared privileged correspondence and information from the Michael's Automotive Services Bankruptcy with the FBI is equally without merit. First, Pavlock fails to identify the specific information he contends was shared. Second, Kevin Clancy, by Pavlock's own admission was a lawyer working with Spencer Graham and the entities (corporations and LLC's) in which Graham, Pavlock and others held interests and therefore

no attorney client privilege attached between Pavlock and Clancy with respect to Michael's Automotive Services. Third, Clancy's providing letters and information in letters to a third party, the Bankruptcy Trustee in the Bankruptcy proceeding, amounted to a waiver of any claim of attorney client or work product privilege. Fourth, while the evidence is that the Bankruptcy Trustee orally gave permission to the FBI to enter and provided Fox with a key and a security code to use in getting inside the property of Michael's Automotive Services, there is no credible factual evidence to support Pavlock's claim that the FBI conducted a warrantless search of the files of Michael's Automotive Services to obtain evidence to further its investigation.

As noted in the undersigned's Opinion, Report and Recommendation relating to the Motion To Suppress, the law on this issue appears to be clear. In Kroll v. U.S., 433 F.2d 1282 (Fifth Cir. 1970), the appellant complained that his motion to suppress the search of the books of a company was erroneously denied because the evidence was obtained through an unlawful search. The company at issue was petitioned into bankruptcy, and the referee in bankruptcy ordered the trustee to take possession of and remove the records from the premises of the company. One and one half years later, an accountant for the SEC requested the trustee's permission to examine the books. The trustee granted permission. The SEC accountant remained on the scene for two years and evidence he gathered was presented to the grand jury and at appellant's trial. The Fifth Circuit found two principal issues: 1) the appellant's standing to object to the search, and 2) the authority of the trustee to consent to the search. The court began its discussion with Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1967), in which the United States Supreme Court considered the issue of standing, pointing out that "standing to object to a search or seizure belongs to one who has title to the premises searched, or to one who has a possessory interest in the premises, or to one

legitimately on the premises where the search occurs." Further, "the right to claim the protection of the Fourth Amendment depends not only on a property right in the invaded place, but also upon whether the area was one in which there was a reasonable expectation of freedom from governmental intrusion."

In <u>Alderman v. United States</u>, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), the Supreme Court found: "Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppression of relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy."

Based upon the above Supreme Court cases, the Fifth Circuit in <u>Kroll</u> concluded that the appellant did not have standing to complain about the search, finding: "Once the corporation was in bankruptcy, Cahn no longer had any title in the corporate records, as title passed by operation of law to the trustee in bankruptcy . . . . Neither did Cahn have any possessory interest in the corporate records. <u>Kroll</u>, 433 F.2d at 1288-89. The court further found that Cahn had no "reasonable expectation" of privacy, as the Trustee is an agent of the bankrupt, is an officer of the court, and a representative of creditors as well. <u>Id.</u> "In light of the strong governmental interest in protecting creditors in a bankruptcy situation a bankrupt would indeed be shortsighted if he did not perceive that many interested parties, governmental or otherwise, might be interested in examining the books of the bankrupt business.

In light of the court's finding that the appellant did not have standing to object to the search, the court did not discuss the second question– the bankruptcy trustee's authority to consent to the search. This Court, however, has discussed the issue. In <u>U.S. v. Patrick</u>, 916 F.Supp 567 (N.D.W.Va. 1996), a bankruptcy trustee gave permission to government agents to take custody of

all books and records of Metro Printing and Mailing Services, Inc. The defendant moved to suppress the search. Magistrate Judge John Fisher found that a valid consent was obtained for the search, and it was therefore unnecessary for the Court to resolve the standing question.

The defendant appealed, arguing that the bankruptcy trustee did not have authority to consent to a search "– a trustee cannot waive a bankrupt party's Fourth Amendment rights." United States District Judge Robert Maxwell first noted the Supreme Court's finding that "[t]he powers and duties of a bankruptcy trustee are extensive." (citing Commodity Futures Trading Comm'n. v. Weintraub, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). He then cited 11 U.S.C. sections 323, 541, and 704, which provide that upon commencement of a case in bankruptcy all corporate property passes to an estate represented by the trustee. The trustee is accountable for that property and has the duty to maximize the estate. The Court then held:

> Given the responsibilities borne by a bankruptcy trustee, it is believed that the trustee may cooperate with a criminal investigation of the debtor corporation and may consent to a search of corporate books and records.

Id. at 571. The Court did note that, if the government had seized property during the search that was not owned by the debtor and/or was not property which passed to the estate represented by the trustee, it believed such items were subject to suppression.

Finally with respect to the bankruptcy issue, Pavlock does not have standing to raise any objection to a search, if any search was conducted, as he had no expectation of privacy interest in the bankruptcy estate or its property (records). There is a clear difference between Patrick and the case a bar. Here the individual objecting to the search is not the debtor, but a purported purchaser of the estate in bankruptcy. The trustee's position, however, does not change. Upon the commencement of the Swaney bankruptcy the property at issue passed to Ms. Swope, the trustee. She was

accountable for that property and had a duty to maximize the estate. On April 28, 2009, after notice and a hearing, U.S. Bankruptcy Judge Bernard Markovitz ordered "Michael's Automotive Service, Ins., its agents, and/or its employees . . . to **IMMEDIATELY VACATE** the property . . . ." Judge Markovitz further ordered the property "be turned over to Lisa M. Swope, Trustee . . . ."

The undersigned finds Ms. Swope had actual authority to consent to the search of the property and did consent. The Court further finds Defendant had no standing to contest the search on the date it occurred. It does not matter if Agent Fox spent multiple days sifting through the records, a fact not proved by Pavlock and denied by the United States[2]. Only the bankruptcy trustee could object that the search exceeded that which she authorized.

Accordingly, the undersigned concludes that since any evidence obtained from the Bankruptcy Trustee or search of the Bankrupt property is not subject to suppression as being illegally obtained, the obtaining of the evidence is not a grounds for dismissal.

The IRS records provided to the Court do not indicate the IRS opened a criminal fraud investigation of Pavlock although there were indications the IRS was considering a possible fraud investigation.

The evidence presented to the Court clearly shows that the investigation of the IRS of Pavlock was begun by the IRS; was carried forward by the IRS and was not promoted by Special Agent Fox of the FBI. There is absolutely no evidence to support Pavlock's assertion that "Fox's

---

[2]There is no evidence a search of file drawers or file boxes was conducted. The Government contends its agents, with the permission of the Bankruptcy Trustee, used the key and security code to gain entrance to the property and buildings and did a walk through plain view search and inventory. Defendant contends files were noted to have been disturbed after the agents had been on the premises but offers no confirmatory evidence to support his conclusion that the files were disturbed by the agents and thus were examined or searched by the agents.

false and misleading information [to the IRS] steered the IRS investigation in the direction of Mr. Pavlock." [DE 136, p. 7]. To the contrary, as previously noted, the IRS obtained information from the West Virginia Secretary of State making Pavlock a person of interest as early as October 2, 2007, approximately four (4) months prior to Fox making his first contact with the IRS.

As the facts of this case exist before the Court, no 6th or 5th Amendment rights violations are implicated.

Defendant's argument that his Fifth and Sixth Amendment rights were violated implicates Miranda v. Arizona, 384 U.S. 436 (1966). Miranda warnings are required when a subject is interrogated while in custody. The test for determining whether an individual is "in custody" for Miranda purposes is whether, under the totality of the circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420 (1984)(internal quotations omitted.)

In U.S. v. Browney, 421 F.2d 48 (4th Cir. 1970), the defendant had also asserted that his Fifth and Sixth Amendment rights were violated during the course of an IRS agent's investigation. The Fourth Circuit first found:

> In a situation in which a taxpayer is interrogated while he is in actual custody, Miranda is applicable and the Miranda warnings must be given prior to the interview. Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968). However, Mathis has no application here since Browney was not in custody at the times of the interviews. . . .
>
> The Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated ... 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' "*Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972)). We have held that an accused is denied "the basic protections" of the Sixth Amendment "when there [is] used against him at his trial evidence of his own incriminating words, which federal agents ... deliberately elicited from him after he had been indicted and in the absence of his counsel."

*Massiah v. United States*, 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); cf. *Patterson, supra* (holding that the Sixth Amendment does not bar postindictment questioning in the absence of counsel if a defendant waives the right to counsel).

We have consistently applied the deliberate-elicitation standard in subsequent Sixth Amendment cases, see *United States v. Henry*, 447 U.S. 264, 270, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) ("The question here is whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements ... within the meaning of *Massiah*"); *Brewer, supra*, at 399, 97 S.Ct. 1232 (finding a Sixth Amendment violation where a detective "deliberately and designedly set out to elicit information from [the suspect]"), and we have expressly distinguished this standard from the Fifth Amendment custodial-interrogation standard, see *Michigan v. Jackson*, 475 U.S. 625, 632, n. 5, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) ("[T]he Sixth Amendment provides a right to counsel ... even when there is no interrogation and no Fifth Amendment applicability"); *Rhode Island v. Innis*, 446 U.S. 291, 300, n. 4, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) ("The definitions of 'interrogation' under the Fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable"); cf. *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (holding that the Sixth Amendment provides the right to counsel at a postindictment lineup even though the Fifth Amendment is not implicated). Fellers v. U.S., 540 U.S. 519, 523-524 (2004).

There is no evidence that Defendant was in custody at the time(s) he was interviewed by the IRS. Miranda therefore does not apply. Thus, Pavlock did not have a right to counsel at any time during the IRS civil investigation.

Estoppel

On July 30, 2010 the District Judge entered an order [DE 96] Adopting The Magistrate Judge's Report And Recommendation [DKT. No. 44] ... Denying Second Motion To Dismiss Indictment. The District Judge's ruling constitutes the law of the case relative to the issue of dismissal based on Outrageous Government Conduct.

The law of the case doctrine provides generally "that prior decision should be binding upon subsequent stages in litigation between parties" and exists "to promote finality, consistency and efficiency." Vortekx, Inc. v. IAS Communications, Inc., 72 F.Supp.2d 638 (N.D.W.Va. 1999). The

11

law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case" "unless: '(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." U.S. ex rel. Staley v. Columbia/HCA Healthcare Corp., 587 F.Supp.2d 757, 761 (W.D.Va. 2008) citing Sejman v. Warner-Lambert Co., Inc., 845 F.2d 66, 69 (4th Cir. 1988). The law of the case doctrine is equally applicable in the criminal case setting as it is in the civil and quasi criminal case settings. U.S. v. Boysaw, 266 Fed. Appx. 284 (4th Cir. 2008).

Pavlock's Third Motion To Dismiss is again based on alleged outrageous conduct on the part of FBI Agent Fox. The present motion simply restates the same type of alleged facts of outrageous conduct by Government agents as asserted in the prior motion to dismiss. The only difference is that the present motion wraps the alleged outrageous government conduct in the new cloth of estoppel instead of simply relying on the conduct.

The only new information supplied from that available at the time of the court's prior denial of the Second Motion To Dismiss, is the affidavit of William L. Graham. Available and considered at the time of denial of the Second Motion To Dismiss were the facts surrounding the dual IRS FBI Investigations; misrepresentations to law enforcement officials to propagate or instigate criminal and civil prosecutions against Pavlock; violations of Pavlock's claimed attorney client privilege with Kevin Clancy and Foxes alleged intimidation of witnesses (including Robert and Edith Konchesky and Kevin Clancy).

Pavlock urges the Court to make an independent judgment whether:

1)  Government misconduct exists and

2) Pavlock suffered prejudice as a result of the misconduct. United States v. Derrick, 163 F.3d 799 (4th Cir. 1998).

Incident to Pavlock's third motion to dismiss, the undersigned reviewed the whole of the IRS transcript provided by Pavlock and the United States; the affidavit of Robert Konchesky; and the affidavit of William L. Graham. In addition, the undersigned offered Spencer Graham and Richard Powell, pro se co-defendant, the opportunity to give testimony under oath at the motions hearing which opportunity each declined. In addition, the undersigned considered the sworn testimony of Michael J. Pavlock.

The Court finds that the affidavit of William L. Graham is cummulative of the information contained in the affidavit of Robert Konchesky. Graham asserts he is not a victim of Pavlock and urgings of Fox were not successful in getting him to say that he was a victim when he was not[3]. The

---

[3]The following are the relevant excerpts from the affidavit of William Graham:
20) That within that interview Special Agent Brian Fox also informed the Affiant that the Affiant's son's tax problem with the Commonwealth of Pennsylvania was as a result of paperwork that the Affiant's son, Spencer W. Graham, II paid Craig A. Golden of Michaels Automotive Services, Inc. and his staff to file but was not filed and paid, and could be straightened out if the Affiant's son, Spencer W. Graham, II and the Affiant would cooperate more effectively against Michael J. Pavlock and that the Affiant's son, Spencer W. Graham, II should go to the Internal Revenue Service and explain the situation and it would be forgiven because the Affiant's son was a victim.
21) That the Affiant is stating that the Affiant does not believe, claimed or has the Affiant ever believed that the Affiant is a victim of Michael J. Pavlock or Richard W. Powell, Jr.
22) That the affiant is stating that the Affiant does not believe or has the Affiant ever believed that the Affiant is a victim of the Affiant's son, Spencer W. Graham, II by him giving the Affiant false information regarding the 1999 Settlement Agreement.
24) That the purpose of this affidavit is to inform the Federal and State Courts that the Affiant has no interest in being portrayed as an elderly victim of Michael J. Pavlock or Richard W. Powell, Jr. and after further information and facts the Affiant finds it insulting and appalling based upon that documented evidence and statements of reliable witnesses that supports the contrary.
25) That the Affiant intends to expend the monies to hire an attorney to insure that the Affiant is not used by the Government or anyone else in any manner that the Affiant does not

cumulative effect of the affidavit of Graham does not bring the conduct of the government agents in this case any closer to a claim of alleged "violation of particular constitutional guarantees...." United States v. Jones, 13 F.3d 100, 104 (4th Cir. 1993) (citing United States v. Hunt, 749 F.2d 1078, 1087 (4th Cir. 1984); United States v. Santana, 6 F.3d 1, 4 (1st Cir. 1993)). Nor does the asserted conduct of Fox (government agent) come any closer to violating Pavlock's right of due process or the sort of governmental conduct that is "so outrageous as to shock the conscience of the court." United States v. Osborne, 935 F2d 32, 36 (4th Cir 1991). Pavlock argues that the alleged approach of Graham by Agent Fox constitutes substantial government interference with defense witness's free and unhampered choice to testify that may violate defendant's right to due process citing United States v. Saunders, 943 F.2d 388, 392-393 (4th Cir. 1991). The Court in Saunders does state:

> Improper intimidation of a witness may violate a defendant's due process right to present his defense witnesses freely if the intimidation amounts to "substantial government interference with a defense witness' free and unhampered choice to testify." *See United States v. Hammond, 598 F.2d 1008, 1012 (5th Cir.1979)* ( *quoting United States v. Henricksen, 564 F.2d 197 (5th Cir.1977)*); *see also United States v. MacCloskey, 682 F.2d 468, 479 (4th Cir.1982)*. In *Hammond* the court found a due process violation when an FBI agent approached a witness during a recess in the trial and told the witness that he knew "about the situation in Colorado" (referring to a state indictment against the witness) and if the witness continued on, the witness would have "nothing but trouble" in Colorado. *Id.* The court found that these "threats to retaliate" amounted to substantial governmental interference. *Id.* at 1013. Likewise in *MacCloskey* the court found improper interference when the U.S. Attorney telephoned the attorney for a witness, against whom charges had been dropped, and said that the attorney "would be well-advised to remind his client that, if she testified at MacCloskey's trial, she could be reindicted if she incriminated herself during that testimony." 682 F.2d at 475.
>
> [8] When a defendant is able to establish a substantial government interference, the inquiry moves to the question of whether it was prejudicial or harmless error. *See United States v. Teague, 737 F.2d 378, 384 (4th Cir.1984)* (contact between government attorney and defendant's witness did not prejudice defendant).

---

believe to be accurate or truthful, and wishes no further contact by the Government without the Affiant's attorney present.

What Pavlock fails to point out is that in <u>Sanders</u>, the Court held:

[9] In this case, although Special Agent Lichacz did interview Kenneth Smith and Tonka Harris, the record does not demonstrate that the interviews caused either substantial or improper interference, and *393 therefore that they improperly denied Saunders of his constitutional right to present the unhampered testimony of witnesses in his defense. Because Saunders has not demonstrated a due process violation, we need not reach the harmless error analysis. *Id.*

As in <u>Sanders</u>, even taking the Graham affidavit at face value and considering it in combination with similar statements by Robert Konchesky[4], they do not demonstrate any substantial or improper interference and do not deny Pavlock of his right to present unhampered testimony of witnesses in his defense.

---

[4]The following are relevant excerpts from the affidavit of Robert Konchesky {ED 40, Exhibit P]:
57) I have demanded that the necessary papers be filed to protect me by Jennifer McGinley to protect my family and I from any further intrusions from the government wherein the government claims I am some sort of an unwitting victim.
58) I again assert that I am not an unwitting victim of Michael Pavlock in 'obtaining expensive living arrangements under false pretenses', and assert that any claim that I am a victim is a complete falsehood....
59) I affirm for the record that I do not believe that I am an unwitting victim of a scheme involving our 1999 Settlement Agreement....
60) I further affirm for the record that I do not believe that I am an unwitting victim of a scheme involving our 1999 Settlement Agreement....
62) I have not an unwitting victim of Richard Powell nor Michael Pavlock, but I do believe that my sister and I have been victimized by Special Agent Brian Fox.
63) I have demanded Jennifer McGinley follow up on both complaints that I have made, one to the Justice Department in Washington D.C. and to Special Agent Jeffery Killen, requesting a investigation into the methods and motives of Special Agent Brian Fox while investigating this matter, specifically upon my complaint that Special Agent Fox lied to my sister, Edith Konchesky, and tried to convince her, wrongfully, that I stole $100,000.00 form her and that I lost my trailer park which was part of her security.
[the undersigned Magistrate Judge copied the above excepts from the Konchesky affidavit without attempting to note or correct the numerous spelling, syntax and grammatical errors therein].

Accordingly, the undersigned concludes that the hearing on the third motion to dismiss did not "[produce] substantially different evidence" from that which was produced incident to the prior motions to dismiss. Nor is there any evidence or argument made that suggests "(2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." U.S. ex rel. Staley v. Columbia/HCA Healthcare Corp., *supra* at 761. Moreover, the evidence before the undersigned fails to establish the existence of government misconduct. Therefore, the undersigned need not address the prejudice prong of Derrick, *supra* at 799.

The undersigned concludes there is no basis in fact or law to revisit the prior Order or its underlying Opinion, Report and Recommendation or to estop the Government from pursuing the indictment against Pavlock.

Bankruptcy Counts of the Indictment

Pavlock again challenges his prosecution[5] under Counts 13, 14 and 15 contending: 1) "[t]he underlying premise of Counts 13, 14 and 15 is that Pavlock controlled the Golden Investment Acquisitions bankruptcy filing;" 2) "[t]hat Pavlock, a third party to Golden Investment, controlled, yet another party, Spencer Graham, to file a bankruptcy in the name of Golden; and that Pavlock did not disclose assets"; 3) "none of the indictment allegations have been raised, at anytime, before the Bankruptcy where the bankruptcy has pend [sic] for more than a year prior to the indictment"; 4) "no governmental agency has even spoken to Golden Investment's bankruptcy attorneys to question them regarding the allegations in the indictment." [DE 136, p. 136].

---

[5]Pavlock previously challenged these counts of the indictment in his prior motions to dismiss [DE 44 and 89].

As previously determined by the District Judge, this challenge "amounts to nothing more than a disagreement with the truth of the factual allegations in those counts" and "[s]uch objections ... must be reserved for trial." [DE 96, p. 6]. Nothing new has been presented incident to this motion which would dictate or warrant a change in the previous determination made by the District Judge.

## IV.
## RECOMMENDATION

For the reasons state herein the undersigned RECOMMENDS that Pavlock's Third Motion To Dismiss Indictment [DE 136] be DENIED.

Any party may, within fourteen (14) days after being served with a copy of this Opinion, Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Opinion, Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Opinion, Report and Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

Dated: October 26, 2010

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE