IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

         Plaintiff,

v.                  //    CRIMINAL ACTION NO. 1:10CR7-2
                                  (Judge Keeley)

RICHARD W. POWELL, JR.,

         Defendant.

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

## I.  INTRODUCTION

Pending before the Court are the motions of the defendant, Richard W. Powell, Jr. ("Powell"), pursuant to Fed. R. Crim. P. 29 for a judgment of acquittal or, in the alternative, pursuant to Fed. R. Crim. P. 33, for a new trial. For the reasons that follow, the Court **DENIES** Powell's motions for judgment of acquittal, or alternatively, for a new trial (dkt. nos. 308, 331, 366), **GRANTS** his motion for leave to file a supplemental motion for a new trial (dkt. no. 369), and **DENIES** that motion (dkt. no. 370).

## II.  BACKGROUND

On January 5, 2010, the Grand Jury indicted Powell for making, or aiding and abetting his co-defendant, Michael J. Pavlock

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

("Pavlock"), in making, false entries in a bankruptcy document in violation of 18 U.S.C. §§ 1519 and 2. The Grand Jury also indicted Powell's co-defendant, Michael J. Pavlock ("Pavlock"), on twelve counts of wire fraud, and three counts of making false entries on a bankruptcy document.

On December 21, 2010, a petit jury convicted Powell on the sole count against him, and Pavlock on all counts. These convictions stemmed from an extensive scheme to defraud that was orchestrated and controlled by Pavlock. The circumstances surrounding Pavlock's scheme to defraud provide the background and context for Powell's count of conviction.

Pavlock's scheme centered around a complicated arrangement he referred to as the "1999 Settlement Agreement." As part of this fraudulent scheme, Pavlock would use associates, such as Powell or Spencer Graham ("Graham"), to serve as the nominal heads of several companies, while Pavlock at all times maintained control and authority over those companies.

Through the illusion of legitimate business activity, Pavlock defrauded numerous persons by assuring them that investments with

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

his sham companies would yield profitable returns. Pavlock, however, repeatedly misappropriated the funds "invested" in his enterprises by using the monies to, among other things, acquire automobiles for his personal use and pay for his girlfriend's cosmetic dental surgery.  Unfortunately, the companies under his control conducted almost no actual legitimate business activity.

One of Pavlock's companies, Golden Investment Acquisitions, LLC ("GIA"), eventually filed for Chapter 11 bankruptcy. It was Powell's dealings with the trustee of GIA's bankruptcy estate that ultimately led to his conviction in this case.

At the time of GIA's formation, its Articles of Organization listed Craig Golden ("Golden") as its sole manager and member. See GIA Articles of Organization (Gov. Ex. 45).  Despite his nominal status as the company's managing member, like the nominal heads of Pavlock's other companies, Golden received direction and instruction from Pavlock.  Among others, those directives included instructions for Golden to purchase and obtain various assets, including recreational vehicles and real property, through borrowed funds from various sources, including Golden's parents and charges

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

on Golden's personal credit cards. <u>See</u> Transcript of Record at 862, <u>United States v. Pavlock, et al.</u>, No. 1:10CR7 (N.D.W. Va. Dec. 13, 2010). Like nearly all of Pavlock's other companies, however, GIA conducted no revenue-generating business.

Eventually, because of severe over-leveraging, GIA found itself in dire financial straits, which led Pavlock to direct a longtime associate, Graham, to put GIA into Chapter 11 bankruptcy. Graham did so by signing bankruptcy petitions as the "manager" of GIA,[1] despite the fact that Golden, who was GIA's sole managing member, never authorized Pavlock or Graham to undertake this action. Graham filed the bankruptcy petitions without authorization while Golden was on vacation. <u>See</u> Transcript of Record at 882-83, <u>United States v. Pavlock, et al.</u>, No. 1:10CR7 (N.D.W. Va. Dec. 13, 2010).

After Pavlock arranged to have Graham place GIA in Chapter 11 bankruptcy, he directed another long-time associate, Powell, to open negotiations with Thomas Fluharty ("Fluharty"), the United

---

[1] Graham signed a voluntary bankruptcy petition on June 6, 2007, and an amended petition on June 22, 2007. <u>See</u> Petitions (Gov. Exs. 51, 520).

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

States Bankruptcy Trustee assigned to the GIA bankruptcy, to discuss purchasing GIA's assets.

Beginning around December 5, 2007, Powell introduced himself to Fluharty as the "managing member" of Fayette Investment Acquisitions, LLC ("FIA"). Id. at 1019. According to Fluharty, in the months that followed, Powell examined GIA's assets, repeatedly expressed interest in purchasing those assets, and assured Fluharty that FIA had the means to finance their purchase. Id. at 1019-25. After extensively negotiating with Powell, Fluharty agreed to sell several of GIA's assets for approximately one million dollars. In accordance with this arrangement, on May 8, 2008, Powell sent Fluharty two checks totaling $1,000,280.00 to purchase GIA's assets. Id. at 1023. Both checks bounced.

Despite his failure to deliver proper payment and complete the transaction, Powell continued to communicate with Fluharty. One such communication was a letter dated January 29, 2009 ("the January 29th Letter"), which formed the basis for Powell's conviction for making false entries in a bankruptcy document. In pertinent part, the letter stated 1) that Graham and Pavlock had

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

loaned "over $500,000.00" to GIA through FIA and Michael's
Automotive Service, and 2) that FIA had obtained "ownership" of
twelve limousines through a prior transfer.  After receiving the
January 29th Letter, Fluharty initiated an adversary proceeding in
the GIA bankruptcy proceeding to recover the limousines on behalf
of GIA, and removed a civil case involving the ownership of the
limousines from the Commonwealth of Pennsylvania in order to
litigate it under the umbrella of the GIA bankruptcy.  See
Transcript of Record at 1032-33, United States v. Pavlock, et al.,
No. 1:10CR7 (N.D.W. Va. Dec. 13, 2010).

Throughout this case, the government has argued that Powell's
two statements in the January 29th Letter were false because there
is no evidence that Graham or Pavlock ever loaned, or even had the
means to loan, money to GIA, or that "ownership" of limousines had
ever been transferred to FIA.  Although Powell did not testify
during his trial, his attorney argued that all he did was sign the
January 29th Letter.  He claimed Pavlock had authored its contents,
and Kevin Clancy ("Clancy"), an attorney for Pavlock's business
enterprises, had drafted it.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

### III.  DISCUSSION

Powell bases his motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33 (dkt. nos. 308, 331, and 366), on the ground that there was insufficient evidence to support his conviction.  More specifically, he argues that the government failed to prove beyond a reasonable doubt that the January 29th Letter contained false statements, or that he intended for it to influence or obstruct the GIA bankruptcy proceeding.  Powell also argues that he was entitled to an advice of counsel instruction, and that the Court erred when it refused to sever his trial from that of Pavlock.  Pursuant to Fed. R. Crim. P. 33(b)(1), Powell has also moved to file a supplemental motion for a new trial based on "newly discovered evidence," and has filed such a motion.

### A.  Motion for Judgment of Acquittal

#### 1.  Sufficiency of the Evidence

A defendant who challenges the sufficiency of the evidence as the basis to overturn his conviction faces an "imposing burden." United States v. Martin, 523 F.3d 281, 288 (4th Cir. 2008) (citing

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997)).  He must establish that "the record demonstrates a lack of evidence from which a jury could find guilt beyond a reasonable doubt."  Id. (citing United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)).  In other words, the jury's verdict must be upheld if, when viewing the evidence in the light most favorable to the government, it is supported by "substantial evidence, including circumstantial and direct evidence."  United States v. Stewart, 256 F.3d 231, 249 (4th Cir. 2001) (citing Glasser v. United States, 315 U.S. 60, 80 (1942); and Burgos, 94 F.3d at 862 n.5)).

Indeed, a single witness's "uncorroborated testimony . . . may be sufficient to sustain a conviction."  United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997) (citing United States v. Baker, 985 F.2d 1248, 1255 (4th Cir. 1993); United States v. Arrington, 719 F.2d 701, 705 (4th Cir.1983)).  Thus, even if the evidence reasonably supports conflicting inferences, the jury's conviction must be upheld if rational jurors could base their verdict on it. See Burgos, 94 F.3d at 862 (quoting United States v. Powell, 469 U.S. 849, 862 (1984)).

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

Here, to convict Powell of making false entries in a
bankruptcy document in violation of 18 U.S.C. § 1519, the
government had to prove beyond a reasonable doubt 1) that Powell
knowingly made or willfully caused another to make a false entry or
statement in a record or document, and 2) that he did so with the
intent to obstruct or influence the administration of a bankruptcy
case. See United States v. Hunt, 526 F.3d 739, 743 (11th Cir.
2008). Count Fifteen charged that Powell's inclusion of the
following two statements in the January 29th Letter violated 18
U.S.C. § 1519:

> Under the terms of a private settlement
> agreement involving multiple parties, Spencer
> Graham and Mike Pavlock, through MAS and later
> my company Fayette Investment Acquisitions
> [sic], loaned over $500,000.00 to GIA to fund
> acquisitions including the Gratz Limousine
> Service.
>
> . . .
>
> With the exception of the two Lincoln
> limousines, all of the physical assets of Mr.
> Gratz's limousine service; [sic] approximately
> twelve aged and nonserviceable [sic]
> limousines and other vehicles; [sic] were
> transferred to the ownership of Fayette
> Investment Acquisition, LLC on December 12,
> 2006.

## MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL [DKT. NO. 369], AND DENYING DEFENDANT'S SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

Letter from Richard W. Powell, Jr., Managing Member, Fayette Investment Acquisitions, LLC, to Thomas H. Fluharty, Bankruptcy Trustee at 2, 5 (Jan. 29, 2009) ("January 29th Letter"). Because the statute of conviction criminalizes the falsification of a bankruptcy document with the intent to obstruct or influence the administration of the bankruptcy proceeding, the jury only needed to find that one of these statements was false in order to convict Powell of this crime. See 18 U.S.C. § 1519.

### a. Powell's Statement Regarding FIA's "Ownership" of the Limousines

Turning first to Powell's argument that the jury could not rationally have found that the January 29th Letter contained false statements, Powell's contention that jurors could not conclude that his statement in the January 29th Letter that limousines had been transferred "to the ownership of [FIA]" was false is unsupportable.[2] The government correctly asserts that there was no evidence admitted at trial establishing FIA as the legitimate owner

_____

[2] Notably, Powell also failed to brief this issue prior to trial, or to file a motion in limine seeking a ruling on this issue. Even if he had, however, this argument lacks a basis in law or fact.

10

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

of the limousines. It had never purchased or received them as gifts, nor had it obtained them through a legitimate business transaction. Based on the absence of any evidence that FIA was the legitimate owner of the limousines, Powell's statement to the contrary was false. See Transcript of Record at 2006-07, 2010 United States v. Pavlock, et al., No. 1:10CR7 (N.D.W. Va. Dec. 21, 2010).

While it is undisputed that the limousines referenced in Powell's January 29th Letter were titled to FIA at the time he wrote the January 29th letter, the government's, contention that the limousine titles in FIA's name actually evinces Powell's theft or fraud is extremely persuasive. This issue traces its origins to GIA's March 31, 2006, acquisition of a limousine business from Charles and Trudy Gratz (collectively, "the Gratzes"). Pursuant to Pavlock's direction, Golden signed a "Contract of Sale" on behalf of GIA under which the company purchased the assets of the Gratzes' limousine business for $175,000.00. See Contract of Sale (Gov. Ex. 46). Although GIA purchased the limousines under the contract, the vehicles were not delivered to Golden or GIA at the time of

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

signing.  Several months later, in December 2006, they were titled

to FIA and delivered into Powell's possession.

In December 2006, during a meeting between Powell and the

Gratzes' accountant, Wallace McCarrell ("McCarrell"), at

McCarrell's office in Washington, Pennsylvania, Powell stated that

he had authority to sign for, and receive, the limousines on behalf

of FIA.  Id. at 1412, 1419.  Strangely, McCarrell never questioned

Powell's authority or FIA's entitlement to sign for the limousines.

Moreover, because Charles Gratz was in Florida, McCarrell notarized

the titles and transferred them to FIA by placing Charles Gratz's

signature, not his own, on them.  Id. at 1411, 1414, 1416.

Following this, the limousines were delivered to Powell.  Id. at

1406.  There was no evidence, however, that established FIA had

ever purchased or acquired the limousines through a legitimate

business transaction with GIA.  To the contrary, Golden, as the

managing member of GIA, testified that GIA had  never relinquished

ownership of the limousines.  Id. at 869-70.

Although Powell argues that FIA's possession of titles to the

limousines is dispositive of the ownership issue, and that the jury

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

therefore could not have found that his statement regarding FIA's ownership of the limousines was false, his argument fails.  Under Pennsylvania law, it is well-settled that, while title to a vehicle serves as "evidence of ownership" of a motor vehicle, it is not "conclusive evidence of . . . ownership[.]"  Thompson v. Thompson, 16 Pa. D. & C.3d 778, 781 (Pa. Com. Pl. 1981) (collecting cases). Thus, even when a person holds "bare legal title," the purchaser of the vehicle who does not hold title to it may still be recognized as its lawful owner.  See See In re Summers' Estate, 226 A.2d 197, 199 (Pa. 1967); Wasilko v. Home Mut. Cas. Co., 232 A.2d 60, 326 (Pa. 1967); Cardish v. Tomazowski, 99 Pa. Super. 360, 1930 WL 3633, at *1-*2 (Pa. Super. 1930).  In light of this, Powell cites no authority to support his contrary argument that FIA's possession of notarized titles, without more, establishes that FIA was the "owner" of the limousines.

Given his conviction by the jury, Powell's actions involving his acquisition of title to, and possession of, the limousines on behalf of FIA could be described as "theft by deception," which is a crime under Pennsylvania law.  See 18 Pa. C.S.A. § 3922;

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

Commonwealth v. Pappas, 845 A.2d 829, 837 (Pa. Super. 2004)
(holding that a person will be guilty of committing this offense
"when 'he intentionally obtains or withholds property of another by
deception.'"). Pennsylvania defines "deception" as "intentionally:
(1) creating or reinforcing a false impression; (2) preventing
'another from acquiring information which would affect his judgment
of a transaction;' or (3) failing 'to correct a false impression
which the deceiver previously created or reinforced.'" Id. (quoting
18 Pa. C.S.A. § 3922(a)(1)-(3); citing Commonwealth v. Fisher, 452
Pa. Super. 564, 682 A.2d 811, 813 (1996)). To convict a defendant
of this offense, "'the Commonwealth must establish not only the
presence of a false impression, but the reliance upon that
impression by the victim.'" Id. (quoting Commonwealth v. Imes, 424
Pa. Super. 633, 623 A.2d 859, 862 (1993)).

The Court could not locate any authority under Pennsylvania
law establishing that a person who acquires property through "theft
by deception," or theft of any kind, becomes its "owner." Indeed,
no one could argue in good faith that a thief becomes the owner of

14

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

stolen property by virtue of his theft. Nor would showing "title" to the stolen property vest the thief with "ownership."

A rational jury could have concluded that there was sufficient evidence in this case to establish that, while Powell possessed titles to the limousines in FIA's name, he had obtained those titles on behalf of FIA through "theft by deception," and that FIA therefore was not their lawful owner. Powell's representations to McCarrell were false because the evidence established that GIA, not FIA, was the purchaser and therefore was entitled to receive titles to the limousines. McCarrell indisputably relied on Powell's false representation when he signed the titles over to Powell on Charles Gratz's behalf. Thus, at the time the January 29th Letter stated that "ownership" of the limousines had been transferred to FIA, Powell knew that FIA's titles had been fraudulently obtained and that FIA in fact was not the true owner of the vehicles.

Accordingly, when the evidence is viewed in the light most favorable to the government, a jury could rationally have concluded that Powell's statement in the January 29th Letter regarding the transfer of "ownership" of the limousines to FIA was knowingly

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

false.  Thus, Powell's challenge to the sufficiency of the evidence on this basis fails as a matter of law.

### b.   Statement Regarding $500,000.00 in Loans to GIA

Powell also argues that the jury could not have reasonably concluded that his statement that Pavlock and Graham loaned $500,000.00 to GIA "through" Michael's Automotive Service and FIA was false.

The evidence at trial, however, established overwhelmingly that Pavlock lacked any assets or means to lend money to any business.  Furthermore, Graham, who earns approximately $50,000.00 a year as an employee of West Virginia University, testified that he never "paid any money" to GIA.  Id. at 1177, 1180, 1200 (dkt. no. 349).

When this evidence is viewed in the light most favorable to the government, reasonable jurors could have concluded that neither Pavlock nor Graham loaned any money to GIA, let alone the sum of $500,000.00.  Thus, jurors could also rationally have concluded that Powell's statement to the contrary in the January 29th Letter

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

was false. Accordingly, Powell's challenge to the sufficiency of
the evidence on this basis is without merit.

### c. Powell's Intent to Influence or Obstruct the GIA Bankruptcy

Powell also argues that the disputed statements in the January
29th Letter were not capable of influencing the GIA bankruptcy
because that letter only urged Fluharty to investigate matters
relating to the bankruptcy. He also argues that there is no
evidence he signed the letter with an intent to influence the GIA
bankruptcy because Pavlock authored the letter and Clancy drafted
it. According to Powell, he merely signed it. Given his state of
ignorance, Powell argues that he could not have intended to
influence the GIA bankruptcy.

As discussed earlier in this opinion, however, Fluharty
testified that, in the year before he received the January 29th
Letter, Powell had negotiated extensively with him concerning FIA's
prospects of acquiring assets from the GIA bankruptcy estate.
Critically, in May of 2008, Powell attempted to purchase such
assets by sending Fluharty two checks for over $1,000,000.00, with
insufficient funds. Id. at 1019-25. During this time, Powell also

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

repeatedly assured Fluharty that he was making financial arrangements to acquire GIA's assets.  Id.

Indeed, the record contradicts Powell's contention that the January 29th Letter was not capable of influencing the GIA bankruptcy proceeding.  Fluharty testified that it did influence his decisions to remove a civil case involving the limousines from the Commonwealth of Pennsylvania to the bankruptcy court and to initiate an adversary proceeding in order to recover the limousines on behalf of the GIA bankruptcy estate.  Id. at 1032-33.

Although Powell's attorney strenuously argued that Powell was simply a pawn in Pavlock's scheme and that he never intended to influence any bankruptcy proceedings when he signed the letter, when viewed in the light most favorable to the government, this background evidence establishes that Powell intended that, as another ruse in a series of ruses regarding the alleged financial prowess of FIA, the January 29th Letter should influence Fluharty's decision-making as the bankruptcy trustee.

Powell fails to establish that there was insufficient evidence to sustain his conviction. To the contrary, the evidence supporting

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

his conviction established overwhelmingly that the January 29th Letter was capable of influencing the GIA bankruptcy, and that Powell signed it with an intent to do just that. At bottom, his arguments "as to why the jury should be unconvinced [are] just what [they] appear, . . . jury argument[s]." United States v. Stevens, 817 F.2d 254, 255 (4th Cir. 1987).

**2.    Advice of Counsel Jury Instruction**

Powell next argues that it was error to refuse to instruct the jury on his defense of reliance on the advice of counsel. By the plain terms of Fed. R. Crim. P. 29, however, Powell may only move for a judgment of acquittal by challenging the sufficiency of the evidence to sustain his conviction. See United States v. Fozo, 904 F.2d 1166, 1171 (7th Cir. 1990) (citing Wright, Federal Practice and Procedure, Crim.2d § 466 (1982)); United States v. Turner, 490 F. Supp. 583, 588 (E.D. Mich. 1979), affirmed by 633 F.2d 219 (6th Cir. 1980). Thus, his challenge to the Court's jury instructions is not properly raised under Fed. R. Crim. P. 29. Nevertheless, even if construed as a challenge to the sufficiency of the

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

evidence, Powell's argument on the Court's jury instructions is
without merit.

First, Powell argues that he was entitled to an "advice of
counsel" instruction because there was no evidence that he
contributed to the content of the January 29th Letter, and the jury
could have inferred that he had disclosed everything he knew to
Clancy when Clancy drafted it.  Second, Powell contends that the
jury could have inferred that he relied on Clancy's advice when he
signed the January 29th Letter.  To support these arguments, Powell
relies on the case of United States v. Mitchell, 495 F.2d 285, 287-
88 (4th Cir. 1974), in which the Fourth Circuit found that a
district court had erred when it refused to instruct the jury
regarding the defendant's reliance on a tax professional in a tax
prosecution.

"The essential elements of the reliance-on-counsel defense are
'(a) full disclosure of all pertinent facts to an expert, and (b)
good faith reliance on the expert's advice.'"  United States v.
Butler, 211 F.3d 826, 833 (4th Cir. 2000) (citing United States v.
Miller, 658 F.2d 235, 237 (4th Cir. 1981)).  To be entitled to a

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]

jury instruction on this defense, a defendant must produce "more than a scintilla" of evidence that he satisfies these elements. United States v. O'Connor, 158 F. Supp.2d 697, 728 n.5 (E.D. Va. 2001); see also United States v. Hicks, 748 F.2d 854, 857 (4th Cir. 1984).

Mitchell is distinguishable from this case.  The defendant there had testified that he provided all of his tax information to his tax preparer and had relied on his tax preparer when he signed his federal income tax return.  495 F.2d at 287.  Based on that testimony, the Fourth Circuit held that it was error for the district court to refuse to instruct the jury on the defense of the defendant's good faith reliance on the advice of his tax preparer. Here, in contrast, Powell did not testify at trial and failed to produce even a "scintilla" of evidence that he had disclosed all of the pertinent facts to any attorney, or, for that matter, that he had relied in good faith on any attorney's advice when he signed the January 29th Letter.  The inferences advanced by Powell do not meet his burden.  Thus, based on his failure to lay an evidentiary

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

foundation for his entitlement to the instruction, the Court did not err when it refused to give it.

### 3. Severance

Powell also argues that the Court should have severed his trial from that of Pavlock. Like his challenge to the Court's jury instructions, however, this argument is not properly raised in a motion filed pursuant to Fed. R. Crim. P. 29. <u>See</u> <u>Fozo</u>, 904 F.2d at 1171. Moreover, Powell's argument as to severance is wholly without merit.

Powell contends he was prejudiced by being tried alongside Pavlock because most of the evidence, including "highly emotional" evidence, related only to Pavlock and would not have been relevant in a separate trial. Accordingly, he contends that a separate trial would have permitted him to avoid the prejudice of being tried alongside Pavlock.

A district court may grant a severance "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United</u>

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

States, 506 U.S. 534, 539 (1993). A district court may not grant
a severance simply because a defendant would have a higher chance
of being acquitted in a separate trial, nor may it grant one when
the evidence is stronger against one defendant than the other. See
United States v. Strickland, 245 F.3d 368, 384 (4th Cir. 2001)
(quoting United States v. Akinkoye, 185 F.3d 192, 197 (4th Cir.
1999)). In order too receive a severance, a defendant must
establish that he would suffer "actual prejudice" from a joint
trial. See United States v. Reavis, 48 F.3d 763, 767 (4th Cir.
1995).

A ruling on a motion for severance is subject to a district
court's discretion. See United States v. Jamar, 561 F.2d 1103,
1106 (4th Cir. 1977). When exercising this discretion, a court
"must carefully weigh the possible prejudice to the accused against
the often equally compelling interests of the judicial process,
which include the avoidance of needlessly duplicative trials
involving substantially similar proof." Id.

The Court did not err when it denied Powell's motion to sever.
First, much of the evidence introduced against Pavlock provided

MEMORANDUM OPINION AND ORDER
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION
FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S
MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL
[DKT. NO. 369], AND DENYING DEFENDANT'S
SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

context for Powell's crime, and a joint trial appropriately relieved the government of the need to introduce duplicative evidence at separate trials. see United States v. Kennedy, 32 F.3d 876, 886 (4th Cir. 1994). Further, to the extent Powell's joint trial had the potential to prejudice him, the Court cured such potential prejudice by instructing the jury that Powell was only charged in Count Fifteen, and that it could not convict him on the mere basis of his association with Pavlock. See Final Jury Instructions at 12-13 (dkt. no. 290). It is appropriate to presume that the jury followed these instructions, and there is no evidence that it failed to do so. See Zafiro, 506 U.S. at 540.

Because the Court's cautionary instruction mitigated against the risk of any prejudice to Powell, and because the interest of avoiding the duplicative introduction of evidence weighed heavily in favor of a joint trial, Powell suffered no prejudice. See Jamar, 561 F.2d at 1106.

## B.   Alternative Motions for a New Trial

Pursuant to Fed. R. Crim. P. 33(a), the Court "may vacate any judgment and grant a new trial if the interest of justice so

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

requires." For the reasons already discussed, Powell's challenges to his conviction are without merit and the interests of justice do not entitle him to a new trial.

## C.    Supplemental Motion for a New Trial

Pursuant to Fed. R. Crim. P. 33(b)(1), Powell seeks leave to file a supplemental motion for a new trial based on "newly discovered evidence" (dkt. no. 369). He argues that the Court should grant him a new trial because, by its express terms, all the January 29th Letter does is urge the bankruptcy trustee, Fluharty, to scrutinize the Gratzes and their attorney, Jim Marchewka ("Marchewka"), and that, in April 2011, Marchewka was charged in Pennsylvania with theft and forgery. Powell also argues that the jury probably would have acquitted him had he introduced evidence regarding Marchewka, because it "would likely have concluded that Powell was right and his warning to the Trustee had merit," and that the government would not have been able to establish that he intended to "influence" the GIA bankruptcy proceeding. Def.'s Supp. M. New Trial at 4 (dkt. no. 370).

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

The government argues Powell's motion should be denied on its merits because 1) it never called Marchewka as a witness, 2) evidence pertaining to Marchewka is immaterial, and 3) Marchewka's criminal conduct has no bearing on the truth or falsity of the two statements the government identified as being false.

A defendant will be entitled to a new trial on the basis of newly discovered evidence if he can satisfy the following five elements:

> "(a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal."

United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993) (quoting United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987) (internal citation omitted)).  Generally, a defendant must satisfy all five elements.  See United States v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001) (recognizing that the Fourth Circuit has

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

"never allowed a new trial unless all five elements were established.").

As the government has correctly observed, the "newly discovered evidence" identified by Powell is immaterial and would not be likely to produce an acquittal. This is because Marchewka's truthfulness or veracity is completely irrelevant to whether the January 29th Letter contained materially false statements by Powell, and it fails to establish that Powell did not intend to influence the bankruptcy proceeding. Even if Powell could introduce evidence that Marchewka had been charged with forgery and embezzlement, Powell's statements that limousines had been transferred to the "ownership" of FIA, and that Powell and Graham loaned $500,000.00 to GIA would still remain false. Moreover, by contending that the letter only expressed Powell's desire to warn Fluharty about Marchewka and the Gratzes, Powell belies his own argument that he did not intend for the letter to influence the GIA bankruptcy proceeding. Accordingly, while the Court grants Powell leave to file his supplemental motion for a new trial (dkt. no. 369), it denies the motion on its merits (dkt. no. 370).

27

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION**
**FOR NEW TRIAL [DKT. NOS. 308, 331, 366], GRANTING DEFENDANT'S**
**MOTION TO FILE SUPPLEMENTAL MOTION FOR A NEW TRIAL**
**[DKT. NO. 369], AND DENYING DEFENDANT'S**
**SUPPLEMENTAL MOTION FOR NEW TRIAL [DKT. NO. 370]**

## IV.   CONCLUSION

For the reasons discussed, the Court **DENIES** Powell's motions for acquittal and for a new trial (dkt. nos. 308, 331, 366), **GRANTS** Powell's motion for leave to file a supplemental motion for a new trial (dkt. no. 369), and **DENIES** Powell's supplemental motion for a new trial (dkt. no. 370).

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Order to counsel of record and all appropriate agencies.

DATED: July 7, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE